OPINION
Justice Moseley
In Bowie County, Texas, Gary Carson entered an open plea of guilty to three counts[1] of assault on public servants who were performing public servant duties, Tex. Penal Code Ann. § 22.01(b) (West Supp. 2016), the penalties being enhanced by previous convictions, Tex. Penal Code Ann. § 12.425 (West Supp. 2016), and three counts of bail jumping, Tex. Penal Code Ann. § 38.10 (West 2011). Carson elected to have the trial court assess punishment, and Carson executed a written waiver of his right to appeal before his plea and sentencing hearing. After a hearing, the trial court sentenced Carson to fifty years’ imprisonment in each of the assault cases and ten years’ imprisonment in each of the bail-jumping cases.[2]
During the hearing on Carson’s motion for new trial, the trial court revealed that before Carson entered his guilty pleas, the trial court read the State’s 404(b)[3] notice *375 and, accepting several of the alleged extraneous offenses mentioned therein as true, relied on them in determining Carson’s sentences. Upon hearing this, Carson objected. Carson’s motion for new trial was overruled by operation of law.
On appeal, Carson contends that (1) the certification of Carson’s right of appeal wherein the trial court alleges that Carson has no right of appeal is incorrect; (2) Carson’s waiver of appeal is invalid; and (3) considering the unproven extraneous offenses alleged in the State’s notice shows that the trial court was biased against him, Carson was deprived of due process.
I. Factual Background
Carson was charged with (a) assaulting Officer Allen Scott Eudy and Officer Shawn Jacobs on or about January 26, 2014, (b) assaulting Sergeant James Michael on or about February 15, 2014, and (c) three counts of bail jumping/failure to appear. Eudy, Jacobs, and Michael were alleged to be public servants who were acting in that capacity. Carson entered an open plea of guilty to all charges and also entered a plea of true to two of the prior felony offenses which were listed in his indictment in order to prove up the requisite facts to support the State’s habitual-offender allegations.
On August 10, 2015, the trial court accepted Carson’s pleas to each charge, found him guilty of each charge, and sentenced him as to each charge. The trial court made certain that Carson understood that he was entering open pleas to all of the indicted charges and that he did “not have an agreement with the district attorney’s office as to any punishment.” Carson entered into evidence a set of medical records regarding his mental health issues, medications, and treatment “so that when he does go to the Texas Department of Criminal Justice, they will have some medical background on him?’ At one point in the hearing, Carson fell down and court personnel called an ambulance. At a later hearing, witnesses testified that Carson was lying on the floor shaking, comparing it to the shaking associated with seizures. Some of the State’s witnesses testified that they believed that Carson’s collapse on the floor was only an act, but a paramedic who examined Carson testified that Carson had been dealing with an elevated heart rate. After that incident, the hearing was recessed and resumed after about twenty minutes.
Upon resumption of the hearing, the trial court sentenced Carson to fifty years’ imprisonment in each of the assault cases and ten years’ imprisonment in each of the bail-jumping cases, with the fifty-year sentences to run concurrently with each other, and the ten-year sentences to run concurrently with each other, but consecutively to the fifty-year sentences.
Although Carson was represented at the plea hearing by an attorney supplied by the public defender’s office, Carson retained counsel to file a motion for new trial. The motion for new trial was based on allegations that the sentence was disproportionate to the crimes and that trial counsel was ineffective by not seeking to have the trial court disqualified because of his prior career as a police officer (which the movant hinted would have tainted the trial court’s attitude against people who áre alleged to have assaulted police officers), by failing to object to a disproportionate sentence, by failing to emphasize Carson’s mental health issues, by failing to properly present those mental health issues to the trial court, and by failing to call some of Carson’s family members and friends as witnesses to testify regarding Carson’s long-standing mental health problems. At the hearing on the motion for new trial, Carson’s mother, Mary Carson, *376 and sister, Lacresha Carson, both testified that Carson’s trial counsel did not contact them to testify at the punishment hearing. Tashara Fox, another of Carson’s sisters, testified that she was willing to have been a witness and although she had spoken with Carson’s trial counsel when she first learned that her brother was going to court, the attorney never contacted her to be a witness at the punishment hearing. During the hearing on Carson’s motion for new trial, the three women asserted that Carson had dealt with mental health problems from an early age. Mary admitted that she also suffered from problems with mental health issues. She and Fox testified that when Carson was thirteen or fourteen years old, he was beaten by a gang of men and kicked in the head and that he had experienced periodic blackouts ever since. Lacresha testified that her experience as a registered nurse showed her that Carson’s actions, even as a child, indicated that he had mental health problems.
Carson’s trial counsel, Will Williams, testified that Carson had claimed to him that he was in the throes of a blackout during each of the assaults on public servants with which he had been charged. Williams admitted that he had not called Lacresha, but that he did not learn of her existence until about three weeks before the punishment hearing (which was conducted on August 10). He acknowledged that he could have tried to contact her (but did not) in time for the hearing on the punishment phase. He also admitted that even though it was on short notice, he had called another of Carson’s sisters, Ma-hagne Carson, and told her to get all the family members who wanted to testify to come to court.
Williams said that he believed that at one point, he had reached an agreement with the State by which Carson would plead guilty and receive a recommendation from it of thirty-five years’ imprisonment, but the State informed him that the trial court would not comply with that request, so the proposed plea agreement was neither pursued further nor made a part of the record. The court’s rejection of the proposed plea agreement concerned and surprised Williams because it made him feel “that whatever punishment [Carson] received if he went to the trial court would be higher than 35 years.” Williams testified that “[a]ny time the Judge has ever told me he wouldn’t accept an offer, he always says, [‘]but we can have a hearing, and you can always change my mind.[’]” The trial court confirmed that Williams has changed the trial court’s mind in the past. Williams informed Carson that if the court determined sentencing, Williams expected a sentence of “somewhere [between] 45 to 50 [years], maybe higher.” If Carson proceeded to a jury trial, Williams believed that—based on Carson’s very lengthy prior criminal history—a jury would likely assess Carson a life sentence. Williams told Carson that his best chance for leniency in sentencing was to enter an open plea, take responsibility for his actions, and spare the court having to conduct a week-long jury trial. Even though there was no plea agreement in this ease, Williams advised Carson to waive his right to appeal and admitted that Carson executed the waiver of appeal prior to sentencing.
At the conclusion of the hearing on the motion for new trial, the trial court commenced a soliloquy by explaining that it ordinarily “tr[ied] not to read the State’s 404(b) notice” of intent to use extraneous offenses “until right before either a plea or a jury selection” because it did not “want to be influenced by what’s in them.” However, the court admitted that it had read the State’s notice in this case either the evening before or “shortly before [Carson] appeared ... on the open plea.” The trial *377 court mentioned the entire list of offenses contained in the notice, addressing each offense and describing the extent to which it played a role in his sentencing decision.
In general, the eight prior felony convictions listed in the notice “jumped out at” the court, as did the fact that three of them were “sexual type offenses.” The court did not know “at the time that the indecent exposure [offense] was what it was.” The court also noticed the four assault cases listed, and though “most of them were misdemeanors, ... they were still assault cases.”
The trial court noted that the “very first felony offense” listed (“carnal abuse first degree”), happened on the same day as a residential burglary, and from that he “could pretty well tell” that the burglary was tied to the carnal abuse offense. The court admitted that the “sexual offense” coupled with “the sex offender failing to report, twice, two different cause numbers approximately two years apart, ... played a huge role in the sentence I gave.”
Continuing down the listed offenses, the court “noticed” that the offenses of possession of a controlled substance in 2007 (which was shown as a prior felony conviction, the existence of which Carson pled true for enhancement purposes), three separate offenses for assault causing bodily injury, injury to a child (the other enhancement in this case to which Carson pled true), and indecent exposure were all offenses in Bowie County. Two offenses for failure to identify himself “caught my attention” because, in the court’s opinion, that meant Carson was “lying about who he is ... and even though they’re misdemeanors ... that caught my attention.” “At the sentencing on the assault charges, those are the things I considered, as far as [the] 404(b) notice.”
Though the court said it did not consider the listed conviction for trespass of a habitation, the court noted that “it’s got a Bowie County [cause] number,” and, apparently imagining the underlying facts of the offense, mused that “[s]ometimes those [offenses] have a much more ... chance of having some violence. I didn’t really think this one did because it didn’t go into any detail. So I didn’t really consider that one very much.”
The court recognized that the convictions for possession of marihuana and driving with an invalid license bore Bowie County cause numbers, but the court did not “consider [those] very heavily.” Likewise, the court said that it did not take into consideration “any of the arrests that were shown in the State’s 404(b) notice” unless they had cause numbers and convictions. Even though Carson’s failures to appear for trial were “a huge inconvenience,” the court did not consider those in determining Carson’s sentence.
While the court believed that Carson faked his in-court fainting spell, the court stated that this incident had no effect on his sentencing. “What did have effect on me, though, was the prior felony convictions, and at that particular time, I thought the number was eight. ... I [went] on the record to let /all know that it was the habitual offender’s paragraphs and his prior felony history” that affected the court’s sentencing decision.
Carson then objected to .the court’s consideration of the alleged convictions contained in the State’s notice in assessing punishment, arguing that other than the two offenses to which Carson pled true, the offenses in the notice were mere allegations and could not be factored into the court’s determination of punishment. The court responded that it “didn’t make up [its] mind on the 50 years until after [Carson] pled true.”
A. Certification of Right to Appeal
*378 As of January 2003, the Texas Rules of Appellate Procedure have required the trial court to enter a certification of the defendant’s right to appeal. Tex. R. App. P. 25.2(a)(2). Under that Rule, the trial court must sign a certification of the defendant’s right to appeal, and the appeal must be dismissed if a certification showing the defendant has the right of appeal is not part of the record. Tex. R. App. P. 25.2(a)(2), (d).
Here, the trial court’s certification indicated that Carson’s conviction came about as the result of a plea agreement and that Carson had no right of appeal. The State argues that the certification is accurate. Going further, it maintains that we must dismiss the appeal because Carson affirmatively waived his right to appeal and that Rule 25.2(d) of the Texas Rules of Appellate Procedure mandates dismissal. Carson contends that the trial court’s certifications are erroneous and that we have the jurisdiction to determine if Carson’s waiver of his right of appeal is valid.
The provisions of Rule 25.2 should not affect an appellant’s substantive rights, such as his right to appeal. Escochea v. State, 139 S.W.3d 67, 71 (Tex.App.-Corpus Christi 2004, no pet.) (citing Shankle v. State, 119 S.W.3d 808, 812 (Tex. Crim. App. 2003) (right of appeal may not be abridged, enlarged, or modified by Rule 25.2)). Therefore, notwithstanding the provisions of Rule' 25.2, we may address the validity of Carson’s written waiver of the right to appeal even though the certification indicates that the defendant has no right of appeal. See Washington v. State, 363 S.W.3d 589, 589-90 (Tex. Crim. App. 2012) (per curiam) (determined waiver invalid and reversed court of appeals decision that dismissed defendant’s appeal based on certification indicating waiver); Escochea, 139 S.W.3d at 71-72 (citing Perez v. State, 129 S.W.3d 282, 287-88 (Tex.App.-Corpus Christi 2004, no pet.) (discussing validity of written waiver of right to appeal)). We address both of Carson’s points of error because they implicate the waiver’s validity.
B. Structural Error
Carson argues that by basing its sentencing decision on the State’s unproven allegations, the trial judge committed structural error, violating his right to due process of law.
When certain constitutional rights are violated, fundamental error occurs. See Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Such errors are “structural defects in the constitution of the trial mechanism.” Id. at 309, 111 S.Ct. 1246. These fundamental constitutional rights include the right to counsel, the right to an impartial judge, the right to not have members of the defendant’s race unlawfully excluded from a grand jury, the right to self-representation at trial, and the right to a public trial. Id. at 309-10, 111 S.Ct. 1246. Fundamental rights “enjoy special protection in the system” in that they cannot be lost by inaction, but rather must be expressly relinquished. Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).
“Due process requires a neutral and detached hearing body or officer.” Brumit v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). A defendant has an absolute right to an impartial judge at both the guilt/innocence and punishment stages of the trial.[4] Hernandez v. State, *379 268 S.W.3d 176, 184 (Tex.App.-Corpus Christi 2008, no pet.); Jaenicke v. State, 109 S.W.3d 793, 796 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). In the absence of a clear showing to the contrary, we will presume that the trial court was neutral, detached, and unbiased in all phases of the trial. Brumit, 206 S.W.3d at 645 (citing Thompson v. State, 641 S.W.2d 920, 921 (Tex. Crim. App. [Panel. Op.] 1982)).
“Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.” Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The terms “bias” and “partiality” do not encompass all unfavorable rulings towards an individual. Instead, they must:
connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because is rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant’s prior criminal activities), or because it is excessive in degree.”
Id. at 550, 114 S.Ct. 1147. A ruling or decision made in reliance on an extrajudicial [5] source is sufficient to show bias and deprivation of due process because it re-suits “in an opinion on the merits on some basis other than what the judge learned from his participation in the case.” United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); see Liteky, 510 U.S. at 554-56, 114 S.Ct. 1147; Kemp v. State, 846 S.W.2d 289, 305-06 (Tex. Crim. App. 1992). Under the same legal principle, a juror is disqualified for bias if they are unable or unwilling to render a verdict based solely on the evidence presented in court. See Patton v. Yount, 467 U.S. 1025, 1037 n.12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).
Here, the trial court read the notice prior to Carson’s guilty plea, his waiver of his rights of appeal, and the plea and sentencing hearings themselves.[6] The notice alleged, in pertinent part, prior offenses in both Miller County, Arkansas, and Bowie County, Texas:
Alleged convictions from Miller County, Arkansas, included the following:
• Carnal Abuse, 1st degree
• Two counts of Residential Burglary
• Domestic Battering, 3rd Degree, and Criminal Contempt
• Sex Offender Failing to Report Change of Address
• Failure to Register or Comply with Reporting Requirements of Sex Offender Registration Act
*380 Alleged convictions from Bowie County, Texas, included the following:
• Two counts of Possession of a Controlled Substance
• Assault Causing Bodily Injury/Family Violence
• Two counts of Assault Causing Bodily Injury
• Injury to a Child
• Sexual Assault of a Child
• Indecent Exposure
• Two counts of Failure to Identify/Fugitive of Justice
• Criminal Trespass of a Habitation
• Possession of a Controlled Substance (Marihuana)
• Burglary of a Habitation
• Driving While License Invalid
Carson pled true to only two of the prior felony convictions listed in the notice (possession of a controlled substance and injury to a child). There is simply no evidence in the record to support, let alone prove, that Carson committed any of the other offenses alleged in the notice. The others stand only as allegations.
Despite the unique facts of this case, a somewhat similar issue arose during the sentencing hearing in Williams v. Oklahoma, a hallmark case upon which the dissent primarily relies. Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Williams robbed a gas station in Tulsa County, forced his way into Cooke’s car, and at gun point, forced Cooke to drive him to Muskogee County, where he murdered Cooke and stole his car. Id. at 577-78, 79 S.Ct. 421. Williams received a life sentence in Muskogee County for the murder, and he subsequently pled guilty to the kidnapping charge in Tulsa County. Id. at 578, 79 S.Ct. 421. During the sentencing hearing, the State (which was seeking the imposition of a death sentence) recounted the armed robbery, the ensuing police chase and “the gruesome details” of Cooke’s kidnapping and murder. Id. at 579, 79 S.Ct. 421. Without first providing any evidence to support the listed crimes, the State also recounted Williams’ prior criminal history as shown by Federal Bureau of Investigation records, including grand theft, escape, two violations of the Dryer Act,[7] and armed robbery. Id. at 579-80, 80 n.4, 79 S.Ct. 421. Williams, pleading for a life sentence, then introduced a transcript from the sentencing proceedings in the Muskogee murder case. Id. at 580, 79 S.Ct. 421. After a two-day recess, the trial court reconvened the sentencing hearing, “called [Williams] to the bar[,] and asked him whether he wished to make any correction in the statement that had been made to the court by the State’s Attorney. [Williams] answered that he did not, and that the matters related in that statement were true.” Id. The court sentenced Williams to death, noting that in doing so, it had considered the State’s argued facts and Williams’ admission that the State’s statement was true. Id. at 581, 79 S.Ct. 421.
On appeal to the United States Supreme Court, among Williams’ arguments was a claim that his rights to due process and fundamental fairness were violated because the trial court allowed the State to make unsworn statements regarding the details of the crime and his criminal history and that the court considered these in imposing the sentence on the kidnapping charge. Id. The Supreme Court held that Williams’ rights to due process and fairness were not violated. That holding was based on the fact that Williams failed to request that the State produce evidence of its argued aggravating factors and that *381 since guilt had been properly established, the trial court, in determining the sentence, was “not restricted to evidence derived from the examination and cross-examination of witnesses in open court” but could also consider the content of the State’s argument because it was “responsible unsworn or ‘out-of-court’ information relative to the circumstances of the crime and to the convicted person’s life and characteristics.” Id. at 583-84, 79 S.Ct. 421.
The facts of Williams, however, are readily distinguishable from those of the present case. In that ease, the trial court specifically questioned the defendant regarding the State’s unproven allegations, and he admitted in response to that questioning that the “State’s Attorney’s statement of the details of the crime and of [his] criminal record” were true. In contrast, with the case now at bar, Carson was provided no such opportunity to contest the contents of the State’s 404(b) notice prior to the trial court’s reliance on those unproven allegations in determining his sentence. Id. at 584, 79 S.Ct. 421. In other words, in the Williams case, the trial court informed Williams that in determining his sentence, the court had considered the unproven allegations of the State’s argument before it ruled, and though it gave Williams the opportunity to attempt to rebut them, he effectively admitted the veracity of the allegations. Here, Carson was given no such notification, but rather, was only told about the reliance the trial court had placed on the existence of the unproven allegations after sentence had been pronounced. See id. at 583-84, 79 S.Ct. 421. Accordingly, we find Williams inapplicable to the present case.
Here, at the conclusion of the hearing on Carson’s motion for new trial, the trial court orally recounted the long list of offenses in the Rule 404(b) notice, one at a time, explaining in great detail if, how, and to what degree each of the allegations affected its decision regarding Carson’s sentence. Even though Carson was given no notice that they were being considered and was provided no opportunity to contest any of them, the trial court made it quite clear that several of the alleged—but unproven—felonies listed in the notice “played a huge role in the sentence [the court] gave” Carson. See id. at 577-78, 79 S.Ct. 421. Therefore, by its own admission, the trial court’s sentencing decision was not based on “what the judge learned from his participation in the case.” See Grinnell, 384 U.S. at 583, 86 S.Ct. 1698. Rather, the record reflects that the court’s sentencing decision was based on the supposition that the trial court should never have considered—that Carson had been finally convicted of about a dozen extraneous felony offenses as alleged in the State’s notice. See Liteky, 510 U.S. at 550, 114 S.Ct. 1147. The presence on the bench of a judge who is not impartial deprives a defendant of his basic protections, and because it is a defect that affects the very framework within which the trial proceeds, it infects the entire trial process. Fulminante, 499 U.S. at 309-10, 111 S.Ct. 1246; see also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Jordan v. State, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008). Therefore, we find that Carson’s fundamental rights were violated, and we reverse the case for a new sentencing hearing. See Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 2016);[8] Fulmi- *382 nante, 499 U.S. at 309-10, 111 S.Ct. 1246 (structural error requires automatic reversal); Johnson v. State, 169 S.W.3d 223, 232-35 (Tex. Crim. App. 2005) (no harm analysis required).
Because the structural error in this case infects the trial process itself, it necessarily invalidates Carson’s waiver of his right to appeal because at the time he executed the waiver, it was not possible for him to have known that the trial court would base its sentence on extrajudicial evidence. See Ex parte Delaney, 207 S.W.3d 794, 799-800 (Tex. Crim. App. 2006) (presentence waiver without agreement on punishment was invalid because the defendant “could not know what errors might occur at the sentencing phase”); Monreal v. State, 99 S.W.3d 615, 617 (Tex. Crim. App. 2003) (valid waiver of appeal must be made voluntarily, knowingly, and intelligently). To rule otherwise would lead to an absurd result—in the face of a pre-sentence waiver of appeal, the State and/or trial court could violate a defendant’s fundamental rights carte blanche while leaving the defendant with no recourse on appeal. As detailed below, even if we were to determine that there was no structural error committed in this case, the waiver of appeal is invalid due to a failure of consideration.
C. Carson’s Execution of a Waiver of His Right to Appeal
Carson also contends that the waiver he executed is invalid because the State failed to give consideration for the attempted waiver.[9]
A defendant in any criminal action has a right to appeal. Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006). However, a defendant in a non-capital felony case may waive any rights secured to him by law, including the right of appeal. Tex. Code Crim. Proc. Ann. art. 1.14 (West 2005). Texas has “long held that a valid waiver of appeal prevents a defendant from appeal *383 ing without the trial court’s consent.” Monreal v. State, 99 S.W.3d 615, 617 (Tex. Crim. App. 2003). A valid waiver of the right to appeal is one that was made voluntarily, knowingly, and intelligently. Id.; Ex parte Tabor, 565 S.W.2d 945, 946 (Tex. Crim. App. 1978).
For many years, the Texas Court of Criminal Appeals held that waivers of appeal made before trial or before sentencing were invalid because: (1) notices of appeal that were filed prematurely were ineffective, as the defendant’s right of appeal had not yet matured; (2) such waivers were not knowingly or intelligently executed because a defendant could not anticipate unknown errors that might occur during trial or sentencing; and (3) before he was sentenced, a defendant could not know with certainty what punishment would be assessed. Ex parte Thomas, 545 S.W.2d 469, 469-70 (Tex. Crim. App. 1977); Ex parte Townsend, 538 S.W.2d 419, 420 (Tex. Crim. App. 1976). However, in Blanco v. State, the court upheld a waiver of appeal that was executed after conviction, but before sentencing, because it was executed in exchange for a plea agreement with a recommended sentence, and there was no compelling reason why the defendant should not be held to his bargain. Blanco v. State, 18 S.W.3d 218, 219-20 (Tex. Crim. App. 2000). The court reasoned that the three issues raised in Thomas and Townsend did not apply to Blanco because the law had changed to allow prematurely filed notices of appeal to be effective, and the recommended sentence in Blanco eliminated any uncertainty as to potential errors in the punishment phase and the sentence itself. Id.
However, in Ex parte Delaney, Delaney entered an open plea to aggravated robbery and as a part of his stipulation of evidence, he also executed a presentence waiver of his right to appeal. Ex parte Delaney, 207 S.W.3d 794, 795 (Tex. Crim. App. 2006). He was placed on deferred adjudication community supervision for ten years, but it was later revoked, and he was sentenced to life in prison. Id. Because the trial court denied him permission to appeal, he filed an application for writ of habeus corpus that claimed he was improperly denied his right to appeal. Id. The court held that Delaney’s waiver was invalid because it was executed prior to sentencing and without an agreement on punishment. Id. at 799. In so finding, the court stated:
When [Delaney] waived his right of appeal at the time he agreed to deferred adjudication, he could not know what errors might occur at the sentencing phase of trial or what punishment would be assessed if guilt was adjudicated. Therefore, [Delaney’s] waiver was not knowing and intelligent and does not bar him from appealing from the punishment phase of trial. Relief is granted, and the trial court is instructed to certify [Delaney’s] , right to appeal issues related to his sentence.
Id. at 799-800.
In Ex parte Broadway, the court filled in some of the gray area between Blanco and Delaney. The defendant in Broadway declined the State’s plea-bargain offer of twenty-five years’ imprisonment, entered an open plea, and executed a presentence waiver of his right to appeal “with the hope that the judge would place him on deferred-adjudication community supervision with drug treatment.” Ex parte Broadway, 301 S.W.3d 694, 696 (Tex. Crim. App. 2009); see Tex. Code Crim. Proc. Ann. art. 1.13 (West Supp. 2016). The trial court found that the State did not want to consent to his waiver of a jury trial, but according to an affidavit from one of his attorneys, Broadway executed the presentence waiver “in order to induce the *384 [S]tate to waive its right to force a jury trial in order that he could ask the court to give him deferred adjudication [community supervision] with drug treatment.” Broadway, 301 S.W.3d at 696. After the punishment phase of the trial, the trial court assessed a punishment of twenty-five years’ imprisonment. Id. at 695. Upon considering Broadway’s application for writ of habeas corpus, the court distinguished that case from Delaney and upheld the presen-tence waiver, finding that even though there “was not a plea bargain,” there was a bargain “of a different sort” in that case because, by agreeing to waive its right to a jury trial—something it did not want to do—the State gave consideration for the waiver. Id. at 695-97.
Very similar circumstances to those in Broadway are found in the recent case of Jenkins v. State, where the defendant rejected a plea agreement, but later entered an open plea without a recommendation from the State on punishment. Jenkins v. State, 495 S.W.3d 347, 349 (Tex. App.-Houston [14th Dist.] 2016, no pet.). At the plea hearing, the trial court reminded the defendant that he had entered an open plea with “no promises whatsoever” and that he could be sentenced “anywhere from deferred up to 99 or life.” Id. As a part of his plea and confession, he also entered a waiver of his right to appeal. A jury trial was waived and the trial court sentenced him to twelve years’ confinement and made an affirmative deadly-weapon finding. Id. at 349-50. On appeal, the State cited Broadway and argued that it gave consideration for Jenkins’ waiver of his right to appeal because it consented to his waiver of a jury trial. Id. at 351. Though the State’s agreement to waive a jury trial did allow the court to consider deferred adjudication on punishment, the court noted that there was no evidence that Jenkins negotiated with the State to obtain that benefit in exchange for the waiver, and, unlike Broadway, there was no finding or evidence that the State did not want to consent to waiving a jury trial. Id. at 352. The court of appeals held the waiver to be invalid because the State’s agreement to waive a jury trial was not a benefit that the parties bargained for. Id. at 351-52.
As in Broadway, in the case under examination here, the State agreed to waive a jury trial on guilt/innocence and argues that its agreement was consideration [10] for Carson’s presentence waiver of his right to appeal.[11] However, the State’s agreement in Broadway provided a legal benefit to the defendant because it allowed the court to consider deferred adjudication in sentencing, whereas here, the State’s agreement provided Carson with no such value.[12] Irrespective of any agreement with the State, Carson was ineligible for deferred adjudication due to the nature and details of his case, so he would gain no advantage in that regard. Further, in light of Carson’s open plea of guilty to the offenses and true as to the enhancements, *385 neither his guilt nor the enhancements were at issue. Accordingly, (considering Carson’s willingness to admit those things), a jury trial on guilt/innocence with the enhanced punishments would serve no purpose other than to waste judicial time and resources. Therefore, the facts of this case are distinguishable from those of Broadway, and we find that Carson’s presentence waiver was unknowing and invalid as to any error in the punishment/sentencing phase of the trial because Carson was in no position to know the nature of the claims he could have brought on appeal in the absence of the waiver.[13] See Ex parte Reedy, 282 S.W.3d 492, 498 (Tex. Crim. App. 2009); see also Broadway, 301 S.W.3d at 695-96; Delaney 207 S.W.3d at 799.
D. The Trial Court’s Error Was Harmful
We have previously determined that the consideration by the trier of fact of the alleged convictions for which no proof was presented amounts to structural error which caused the entire sentencing process to be invalid. “A ‘structural’ error ‘affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself,”’ and is not amenable to a harm analysis. Jordan v. State, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) (quoting Fulminante, 499 U.S. at 310, 111 S.Ct. 1246).
However, even if we consider, arguendo that there had been no structural error in the case, it was still error for the trial court to have relied upon unproven facts that were not in evidence. See Tex. R. Evid. 101(b), (d); Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2016). In most situations, the question of the consideration of facts which are not in evidence involves a jury trial, not a bench trial. When a jury’s factual determination is involved and there is a possibility that the jury heard facts that were not placed into evidence, the appellate court is placed in the position of determining whether those facts had an impact on the outcome of the case and, if so, whether the impact was harmful to the appellant. Schmutz v. State, 440 S.W.3d 29, 40 (Tex. Crim. App. 2014). That is not the case we have here. In Carson’s situation, the trier of fact expressed on the record that the non-eviden-tiary facts were taken into account and that many of those unproven factors had a major impact on the trial court’s determination of the sentence to be meted to Carson. The trial court apparently rejected a proposed pretrial plea agreement wherein Carson would have received a thirty-five-year sentence, but after considering facts and prior convictions not in evidence, the court sentenced Carson to serve two concurrent fifty-year sentences, followed consecutively by two concurrent ten-year sentences—a sentence that was some fifty-eight percent more burdensome than that originally proposed by the State. This was plainly harmful error which adversely impacted Carson. Although Carson was unaware until the hearing on the motion for new trial that the trial court had considered these things in arriving at the sentences, he preserved the error by objecting to the procedure as soon as it was discovered. In this circumstance, harmful error has been committed.
We affirm Carson’s conviction of assault on a public servant with the enhancement *386 of the penalty as shown in the indictment. However, we reverse the assessment of the punishment and remand this matter to the trial court for further proceedings.
II. Modification of the Trial Court’s Certification of Carson’s Right to Appeal
If the appellate court determines that the certification is defective (contrary to the record), the clerk must notify the parties so that the defect can be remedied. Tex. R. App. P. 37.1; Harris v. State, 137 S.W.3d 829, 830-31 (Tex. App.-Waco 2004, no pet.) (per curiam); Hargesheimer v. State, 126 S.W.3d 658, 659-60 (Tex. App.-Amarillo 2004, pet. ref'd) (per curiam). If that action does not produce a valid certification, the appellate court may order the trial judge to provide one. Tex. R. App. P. 34.5(c).
Here, during the plea/sentencing hearing, the trial court reminded Carson that he was entering open pleas, that he had executed a waiver of his right to appeal, and that the court would determine punishment. However, the trial court’s certification of Carson’s right to appeal, signed by the trial court on August 10, 2015, indicated that this was a plea bargain case and, therefore, that he had no right to appeal. Carson filed a motion to change the certification, and during the hearing, argued that his case was not controlled by Rule 25.2 because it was not a plea bargain case; the trial court rejected that argument. After receiving the record and certification in this case, this Court sent a letter to the trial court noting the apparent inaccuracy of the certification and requesting that the trial court file a supplemental clerk’s record containing an accurate certification or other documentation demonstrating the accuracy of the current certification. In response, we received a supplemental clerk’s record containing the court’s docket sheets, a receipt of exhibits, and the same inaccurate certification.
Under Rule 25.2, a plea bargain ease is “a case in which a defendant’s plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant.” Tex. R. App. P. 25.2(a)(2). Here, Carson entered open pleas of guilty to the crimes with which he was charged and entered a plea of true as to the cases used for enhancement. The State made no recommendations as to the sentences; therefore, Carson’s cases were not plea bargain cases for the purpose of the certification of the right of appeal. See Dears v. State, 154 S.W.3d 610, 613 (Tex. Crim. App. 2005).
Due to our ruling hereinabove, Carson has a right to appeal. In the light of our previously unsuccessful attempt to obtain an accurate certification from the trial court, and in order to expedite this case, we hereby modify the certification to show that Carson possesses the right to appeal. See Tex. R. App. P. 2 (court of appeals may suspend the Rules of Appellate Procedure “to expedite a decision or for other good cause”).
We affirm Carson’s conviction of assault on a public servant with the enhancement of the penalty as shown in the indictment. However, we reverse the assessment of punishment and remand this matter to the trial court for further proceedings.

. The charges were made through four separate indictments. Carson has filed a single brief raising the same issues in all four cases. We reach the same result in the other three cases, released today in separate opinions under cause numbers 06-15-00171-CR, 06-15-00172-CR, and 06-15-00173-CR.

. The assault charges were enhanced by two prior felony convictions, to which Carson pled true. The fifty-year sentences were to run concurrent to each other, and the ten-year sentences were to run concurrent to each other, but consecutively to the fifty-year sentences.

. Rule 404(b) requires the State to provide notice that it intends to introduce, in its casein-chief, evidence of other crimes, wrongs, or acts. Tex. R. Evid. 404(b). Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State’s case-in-chief such evidence other than that arising in the same transaction.

. In Marin v. State, the Texas Court of Criminal Appeals divided a defendant's rights into three categories: absolute rights, waiver-only rights, and forfeitable rights that must be im *379 plemented on request. Marin v. State, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993), overruled, on other grounds by Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). The court further held that the requirement of Rule 33.1 of the Texas Rules of Appellate Procedure that a defendant must object to preserve error does not apply to rights falling within the first two categories. See Marin, 851 S.W.2d at 279-80; see also Blue, 41 S.W.3d at 137 (Keasler, J., concurring) (explaining the history of the Marin framework). Barring an express waiver of the right, error alleging that the trial court disregarded an absolute, structural right may be raised for the first time on appeal. Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

. Extrajudicial is defined as "[o]utside court” or “outside the functioning of the court system,” and "[n]ot done or made as a part of a judicial proceeding.” Roman v. State, 145 S.W.3d 316, 321 (Tex. App.-Houston [14th Dist.] 2004, pet. ref’d) (quoting Extrajudicial, Black’s Law Dictionary (7th ed. 1999)).

. The trial court did not err by reading the notice. Its error lay solely in failing to set aside this knowledge and rule only on the evidence properly before it.

. 18 U.S.C.A. § 10 (West, Westlaw through P.L. 114-254 Jan. 9, 2017).

. Article 44.29(b) of the Texas Code of Criminal Procedure states:
If the court of appeals or the Court of Criminal Appeals awards a new trial to a defendant other than a defendant convicted of an offense under Section 19.03, Penal Code, only on the basis of an error or errors made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by *382 the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of this code, If the defendant elects, the court shall empanel a jury for the sentencing stage of the trial in the same manner as a jury is empaneled by the court for other trials before the court. At the new trial, the court shall allow both the state and the defendant to introduce evidence to show the circumstances of the offense and other evidence as permitted by Section 3 of Article 37.07 of this code.
Tex. Code Crim. Proc. Ann. art. 44.29(b).

. Carson also contends that his claim of judicial bias may be addressed under the Rankin/Young exception. Rankin v. State, 46 S.W,3d 899, 901 (Tex. Crim. App. 2001); Young v. State, 8 S.W.3d 656, 666-67 (Tex. Crim. App. 2000). A voluntary plea of guilty or nolo contendere entered with or without an agreed recommendation of punishment by the State waives all nonjurisdictional errors which may have occurred before entry of the plea. Helms v. State, 484 S.W.2d 925 (Tex. Crim. App. 1972). In Young, the Court of Criminal Appeals modified the Helms rule so that if a defendant enters a valid plea of guilty or nolo contendere, whether or not he received an agreed recommendation of punishment, he waives or forfeits the right to appeal an error "when the judgment of guilt was rendered independent of, and is not supported by, the error.” Rankin, 46 S.W.3d at 901 (citing Young, 8 S.W.3d at 666-67). That is—a defendant pleading guilty or no contest may still appeal an error when the judgment of guilt depends upon or is supported by the error. Young, 8 S.W.3d at 666-67. There is caselaw holding that the Helms rule does not apply to errors "occurring at or after entry of [the] plea,” McCain v. State, 24 S.W.3d 565, 568 (Tex. App.-Waco 2000), pet. granted by Ex parte McCain, 67 S.W.3d 204 (Tex. Crim. App. 2002) (quoting Daw v. State, 17 S.W.3d 330, 331 (Tex. App.-Waco 2000, no pet.)). Due to our ruling in this case, we need not address whether Carson’s claims fall within the Young exception.

. The State also argues that it dropped enhancement paragraphs from the bail-jumping charges, but there is no evidence that the enhancements were dropped pursuant to any negotiation or agreement with Carson in exchange for his presentence waiver.

. Carsons’ counsel testified that he “negotiated to get the State to waive a jury” trial in exchange for Carson’s waiving his right to appeal.

.Other types of legal bargains can constitute sufficient consideration to validate a pre-sentence waiver, including, but not limited to: (a) pleading guilty in one case, without an agreement on punishment, in return for the dismissal of other offenses; (b) an agreement that a deadly-weapon finding would not be sought or made; or (c) the State abandoning an enhancement paragraph. Broadway, 301 S.W.3d at 699 (Womack, J., concurring).

. A waiver will be voluntarily, "knowingly and intelligently made only under circumstances in which, and to the extent that, [the defendant] is aware of what has occurred in the trial proceedings [because] [o]nly then is he in a position to know the nature of the claims he could have brought on appeal but for his waiver.” Ex parte Reedy, 282 S.W.3d 492, 498 (Tex. Crim. App. 2009).