

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00051-CR

TERRANCE NORVELL, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 51694-A

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Terrance Norvell, Jr., was convicted by a jury of aggravated assault with a deadly weapon. After the jury found the State's punishment enhancement allegations true, the trial court imposed the jury's assessed sentence of forty years' imprisonment. On appeal, in two points of error, Norvell argues that the trial court erred by admitting extraneous-offense evidence during the guilt/innocence portion of his trial. We conclude that (1) Norvell failed to preserve his complaint that the extraneous-offense evidence was inadmissible due to an allegedly insufficient relationship allegation in the State's indictment and (2) the trial court did not abuse its discretion in admitting the evidence. As a result, we affirm the trial court's judgment.

*(1)   Norvell Failed to Preserve His Complaint that the Extraneous-Offense Evidence Was Inadmissible Due to an Allegedly Insufficient Relationship Allegation in the State's Indictment*

Norvell argues that the extraneous-offence evidence should not have been admitted under Article 38.371 of the Texas Code of Criminal Procedure because the State's "indictment contain[ed] no language linking the defendant and victim through Articles 71.0021(b), 71.003 or 71.005 of the Family Code." The State argues that Norvell has failed to preserve this point of error. We agree that the issue has not been preserved.

The State originally indicted Norvell in cause number 50064-A for aggravated assault. The indictment under that cause specified that the victim, "Jessica Shaw-Williams," "was a member of Defendant's family and a person whose relationship to or association with Defendant [was] described by Chapter 71, Family Code." The State later indicted Norvell in this case under cause number 51694-A for "AGGRAVATED ASSAULT WITH A DEADLY WEAPON-

2

FAMILY VIOLENCE" and moved to adopt all filings under cause number 50064-A into cause number 51694-A. In the current case, the State alleged that Norvell "intentionally, knowingly, or recklessly cause[d] bodily injury to Jessica Shaw, by striking her with [his] hand" and that he used or exhibited a firearm during the commission of the assault. Although the indictment in the latter case listed the offense as family violence, it omitted the earlier indictment's language specifying that Shaw had a relationship with Norvell as described by Chapter 71 of the Texas Family Code. Even so, it was undisputed that Shaw and Norvell had a dating relationship and were living together.

One of the filings adopted from the old cause into the new one was the State's notice of intent to offer extraneous-offense evidence, which specified Article 38.371 of the Texas Code of Criminal Procedure, among other rules, as the State's theory of admissibility. Article 38.371 applies to "a proceeding in the prosecution of a defendant for an offense . . . for which the alleged victim is a person whose relationship to or association with the defendant is described by Section 71.0021(b) . . . Family Code." TEX. CODE CRIM. PROC. ANN. art. 38.371(a) (Supp.). Section 71.0021(b) defines a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b). In such a proceeding,

> subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

TEX. CODE CRIM. PROC. ANN. art. 38.371(b) (Supp.).

3

Under its notice, the State specified that it intended to offer evidence of nineteen separate extraneous offenses to show the nature of the relationship between Norvell and Shaw. Norvell filed a written objection to the admission of extraneous-offense evidence; the objection argued that the extraneous-offense evidence was inadmissible under Rules 401, 402, 403, and 404(b) of the Texas Rules of Evidence but did not respond to the State's theory of admissibility under Article 38.371(b). During a pretrial hearing, the State argued that the evidence was admissible to show the nature of the relationship between Shaw and Norvell, which "lasted . . . from the fall of 2019 really to [the time of trial]." Norvell did not argue that he and Shaw had not had a dating relationship and instead argued only that Article 38.371(b) did not apply unless the victim recanted her accusations.[1] Norvell never presented to the trial court his appellate argument that Article 38.371(b) did not apply because the State had omitted any reference to family violence in the new indictment, except for the reference in the title.[2]

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). When an issue has not been preserved for appeal, this Court is not permitted to address the merits of that issue. *Id.* "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity

---

[1]During argument, Norvell's counsel admitted, "I suppose all of these that we've just discussed here today under 38.371, the nature of the relationship type evidence, so it would certainly involve the nature of the relationship between Ms. Shaw and Mr. Norvell."

[2]To the extent Norvell's complaint can be interpreted as raising any defect, error, or irregularity in the State's indictment, Norvell was required to raise this issue below with the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b).

4

to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). For this reason, a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005).

Norvell never presented his argument that Article 38.371(b) would not apply because the "indictment contain[ed] no language linking the defendant and victim through Articles 71.0021(b), 71.003 or 71.005 of the Family Code." As a result, we find that Norvell failed to preserve this issue for our review. We overrule this point of error.

*(2)    The Trial Court Did Not Abuse Its Discretion in Admitting the Evidence*

Norvell also argues that some of the extraneous-offense evidence should have been excluded under Rules 402, 403, and 404(b) of the Texas Rules of Evidence. "We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810

5

S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g))). We are not to substitute our own decisions for those of the trial court. *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). And we should uphold a trial court's evidentiary ruling if we find it correct on any theory of law applicable in the case. *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

By its notice, the State specified that it intended to offer the following evidence of extraneous offenses witnessed by Shaw to show the nature of the relationship between her and Norvell:

1. On or about the Fall to Winter of 2018 the Defendant committed assault causing bodily injury in Knox County, Illinois against an unknown male.[3]

2. Between the periods of the Fall of 2018 and December of 2019 the Defendant caused damage to Jessica Shaw's property, including her vehicle, in Knox County, Illinois.

3. On or about the Spring of 2019[,] the Defendant pushed Jessica Shaw into a door and choked her regarding a bag of weed, in Knox County, Illinois.

4. On or about the Spring of 2019[,] the Defendant pointed a gun at Jessica Shaw in Knox County, Illinois.

5. On or about the Spring of 2019[,] the Defendant drove around shooting at houses with a firearm in Knox County, Illinois.[4]

6. On or about May 9, 2019, the Defendant committed assault against J.S., Jessica Shaw's son, in Knox County, Illinois.

7. On or about May 10, 2019[,] the Defendant was arrested for two counts of unlawful possession of a weapon by a felon, unlawful possession of a

[3]As to allegation number 1, the State clarified that Norvell made Shaw witness the assault.

[4]As to allegation number 5, the State alleged that Norvell made Shaw drive with him and witness the shootings as a form of intimidation.

6

weapon by a gang member, unlawful restraint, possession of any substance with intent, and intimidation in Knox County, Illinois.[5]

8. On or about May 10, 2019[,] the Defendant was charged with two counts of possession of a weapon by a felon, unlawful restraint, and misdemeanor aggravated assault in Knox County, Illinois.

9. On or about May 10, 2019[,] the Defendant committed theft of firearms by taking Jessica Shaw's glock pistol and shotgun in Knox County, Illinois.

10. On or about September 11, 2019, the Defendant committed cruelty to [a] non-livestock animal by cutting Jessica Shaw's dog with a machete in Gregg County, Texas.

11. On or about the Fall of 2019[,] the Defendant threatened to shoot through the floor at or in the direction of a downstairs neighbor in Gregg County, Texas.

12. On or about the Fall of 2019[,] the Defendant caused damage to Jessica Shaw's vehicle in Gregg County, Texas.

13. On or about November 21, 2019[,] the Defendant committed aggravated assault with a deadly weapon by pointing a firearm at Jessica Shaw, in Gregg County, Texas.

14. The Defendant is in the gang "Renegade" – a section of the Gangster Disciples in Knox County.[6]

15. The Defendant uses illegal narcotics.[7]

. . . .

21. The Defendant:  used and/or exhibited weapons in a threatening manner, threatened physical abuse against the victim, her family, and her pets and

---

[5]As to allegation number 7, the State clarified that Shaw was arrested on that date for holding Shaw hostage and argued that this evidence was admissible to show his motive in committing the aggravated assault.

[6]The evidence showed that Shaw feared Norvell due to his gang affiliation and believed that she would suffer retaliation if she reported his actions.

[7]The State argued that Shaw would testify that "a large part of the assaults the defendant committed on her were due to drugs."

property, took the victim to witness acts committed in paragraph I., 1-15, and making the victim aware of acts committed through Defendant's role in the Renegade gang as forms of intimidation and control.

22. The Defendant over the course of the relationship called the victim derogatory names, made derogatory or insulting comments towards the victim.

23. The Defendant only allowed the victim to go to and from work if he drove her, threatened to call her job and get her fired, and controlled the victim's finances.

24. From December 8, 2019[,] to present, the Defendant has called and caused his family to communicate with the victim repeatedly. Communications include references to the victim's family's whereabouts as a form of intimidation to the victim.

After Norvell made general objections arguing that the evidence was not relevant, it constituted impermissible character evidence, and its probative value was substantially outweighed by the danger of unfair prejudice, the State argued that the evidence was needed to establish the nature of the relationship and to rebut the defendant's attacks on Shaw's credibility. The trial court admitted the extraneous offenses "to allow [Shaw] to get into her prior relationship with Mr. Norvell" and found that the evidence was probative to show both that "Norvell intimidated the witness" and to show why and how the offense occurred.

We find no abuse of discretion in the admission of the evidence due to its (a) general relevance, (b) relevance beyond character conformity, and (c) probative value when balanced under Rule 403.

*(a)    General Relevance*

On appeal, Norvell argues that Rule 402 prevented the admission of the extraneous-offense evidence. Under Rule 402, irrelevant evidence is not admissible. Evidence is relevant if

8

it has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." TEX. R. EVID. 401. "The threshold for relevance under Rule 401 is very low," *Haley v. State*, 173 S.W.3d 510, 520 (Tex. Crim. App. 2005) (Keller, P.J., concurring), and the evidence "need not prove the point by itself," *Beham v. State*, 559 S.W.3d 474, 482 (Tex. Crim. App. 2018).

Norvell's brief fails to acknowledge the relevancy arguments made by the State. Since the extraneous offenses bore on the nature of the relationship, the trial court did not abuse its discretion in finding them relevant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(b); *Miller v. State*, No. 06-20-00015-CR, 2020 WL 4044717, at *2 (Tex. App.—Texarkana July 20, 2020, no pet.) (mem. op., not designated for publication).[8] The extraneous offenses were also relevant because they "ha[d] a tendency to make probable the State's theory that [the defendant] possessed the requisite intent at the time of the offense." *Miller*, 2020 WL 4044717, at *2 (second alteration in original) (quoting *Smith v. State*, 314 S.W.3d 576, 592 (Tex. App.—Texarkana 2010, no pet.)). We overrule Norvell's complaint under Rule 402.

*(b)     Relevance Beyond Character Conformity*

Norvell further argues that some of the extraneous offenses should have been excluded under Rule 404(b) of the Texas Rules of Evidence. Specifically, Norvell complains of the evidence that he (1) assaulted a man in Shaw's presence, (2) made Shaw witness him shooting guns at houses, (3) previously pointed firearms at Shaw, (4) injured Shaw's dog, (5) assaulted

---

[8]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

Shaw's son, and (6) held Shaw hostage.[9] We discuss Shaw's testimony about these extraneous offenses.

At trial, Shaw testified that she met Norvell in 2018, while she lived in Illinois. The two began a dating relationship, which Shaw described as "really good . . . in the very beginning" until Norvell began physically assaulting her and making comments "to instill fear." After the "honeymoon phase" of their relationship had passed, Shaw testified that Norvell "made [her] ride with him" when he went to confront a man and became "terrified" when she witnessed him "stomp a grown man into the ground." During another incident, Shaw said that Norvell pulled out his gun while he was driving, "started shooting at random houses," and "shot off a couple more" rounds after she pled with him to stop. Shaw said she wanted to end the relationship but did not because Norvell "had already moved in," and she was afraid to confront him.

Shaw said Norvell had pulled a gun on her several times while threatening to kill her. On one occasion, Norvell pointed his gun at Shaw's dog after Shaw expressed love for the animal. When Shaw jumped between Norvell and the dog, Norvell threatened to shoot Shaw while

---

[9]Norvell has forfeited any argument that Rules 403 and 404(b) barred the introduction of any extraneous offense not discussed in the analysis section of his brief. "To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (quoting Tex. R. App. P. 38.1(i)) (citing *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000)). "Because the Texas Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance." *Id.* (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673).

"To avoid forfeiture, a party must provide substantive analysis by applying the law to the facts." *Id.* (citing *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal to grant petition for discretionary review)). "A brief that fails to apply the law to the facts does not comply with Rule 38.1 and presents nothing for review." *Id.* (citing *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003)). Because there is no argument that the trial court erred in admitting the other extraneous offenses not discussed in the analysis portion of the brief, and no substantive briefing related to the other extraneous offenses, we address only the six offenses discussed in the brief.

pointing the gun in her direction. Shaw said that she was "terrified because . . . there was a bullet in the head of the [gun]," which did not have a safety. Shaw testified that Norvell later slashed her dog with a machete after it had urinated inside, but the dog was saved after receiving thirty-seven staples during an emergency surgery.

While they were still living in Illinois, Shaw said that Norvell punched her youngest son in the face during an argument with him. On the day after Norvell punched Shaw's youngest son, her other son called the police. By the time the police arrived, Shaw said Norvell "had started drinking . . . and he had the Glock on his lap pointed in [her] direction." Norvell was arrested after what was described as a hostage situation, pled guilty to an offense, and was jailed for sixty days. On the day after his arrest, Shaw and her youngest son moved to Texas to escape Norvell, but he discovered Shaw's whereabouts and also moved to Texas. While in Texas, Shaw said Norvell became upset after seeing an article about his Illinois arrest, which caused him to become more aggressive toward her younger son.

According to Shaw, Norvell was still "amped up over the article" during the incident that led to the State's indictment in this case. Shaw testified that Norvell punched her during an argument, causing her to scream because it "was the hardest he [had] ever hit [her]." Norvell then threw his phone at Shaw, hitting her in the head. After Shaw texted her friend for help, Norvell "started loading the guns" because he knew the police were on their way. Norvell loaded two weapons and pointed one of them at Shaw and then at Shaw's son's room while communicating to her that, "if he was going to go back to jail, he was going to make sure it was for good." Norvell was arrested after Shaw's friend called the police.

11

Under Rule 404(b) of the Texas Rules of Evidence, "evidence of other crimes, wrongs, or acts is not admissible 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Davison v. State*, 602 S.W.3d 625, 651 (Tex. App.—Texarkana 2020, pet. ref'd) (quoting TEX. R. EVID. 404(b)(1)). "But it may 'be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.'" *Id.* (quoting TEX. R. EVID. 404(b)(2)). "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *Id.* (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. 2009)).

"Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000))). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343) (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)). "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343 (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003))).

In a recent opinion, our sister court found in *James v. State* that "Article 38.371, which applies to family-violence prosecutions, provides another non-character-conformity purpose for admitting extraneous-offense evidence." *James v. State*, 623 S.W.3d 533, 545 (Tex. App.—Fort Worth 2021, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 38.371). Even though Section 38.371(c) disallows character evidence otherwise prohibited by Rule 404(b), Section 38.371(b)

12

"expressly allows 'evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship' between the accused and the complainant." *Id.* at 545–46 (citing TEX. CODE CRIM. PROC. ANN. art. 38.371(b), (c)). As a result, "extraneous-offense evidence regarding the nature of the relationship between an accused and a complainant" is admissible under Rule 404(b). *Id.* at 546 (citing *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at \*4–5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication); *Franco v. State*, No. 08-18-00040-CR, 2020 WL 3168560, at \*8 (Tex. App.—El Paso June 15, 2020, no pet.) (not designated for publication) ("[T]he Legislature has determined under article 38.371 that the nature of the relationship itself is a permissible, non-character-conformity purpose for which evidence is admissible."); *Fernandez v. State*, 597 S.W.3d 546, 564–66 (Tex. App.—El Paso 2020, pet. ref'd)).

To convict, the jury was required to find that Norvell committed the act intentionally, knowingly, or recklessly. The extraneous-offense evidence showed the intimidating nature of the relationship between Norvell and Shaw and strongly served to make more probable the existence of the required *mens rea*. Because extraneous offenses are admissible to show intent under Rule 404(b)(2) and because the evidence is permitted by Article 38.371, the trial court, which expressly took guidance from our sister court's opinion in *James* in making its ruling, did not abuse its discretion in overruling Norvell's Rule 404(b) objection. *See id.*

*(c)      Probative Value When Balanced Under Rule 403*

Finally, Norvell argues that the trial court erred by admitting the six extraneous offenses mentioned in the analysis portion of his brief over his Rule 403 objection. "Evidence admissible under Rule 404(b) may nevertheless be excluded under Rule 403 'if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.'" *James*, 623 S.W.3d at 546 (quoting TEX. R. EVID. 403).  When a trial court conducts a balancing test under Rule 403, it

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).  In any given case, "these factors may well blend together." *Id.* at 642.

"Rule 403 favors admissibility, and 'the presumption is that relevant evidence will be more probative than prejudicial.'" *James v. State*, 555 S.W.3d 254, 260 (Tex. App.—Texarkana 2018, pet. dism'd, untimely filed) (quoting *Montgomery*, 810 S.W.2d at 389).  Only if the danger of unfair prejudice substantially outweighs the probative value of the evidence will we find that the trial court abused its discretion in admitting the evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

14

As previously discussed, the extraneous offenses showing the nature of Norvell and Shaw's relationship was strongly probative of the issue of Norvell's intent at the time of the offense. *See James*, 623 S.W.3d at 547. Also, in opening statements, Norvell's counsel attacked Shaw's credibility and claimed that she fabricated her complaints about Norvell. Thus, the extraneous offenses were allowable as being strongly "probative to rebut the defensive theory of fabrication." *Id.* at 548. Although Shaw's youngest son heard Norvell hit her and heard a shotgun being loaded, he did not see the incident. Because there were no eyewitnesses to the incident and because Norvell argued that Shaw was fabricating it, the State's need for the evidence was high. Consequently, we find that the first two *Gigliobianco* factors weigh in favor of admission.

As for the next three factors, the extraneous offenses were no worse than the offense for which Norvell was being tried—aggravated assault with a deadly weapon. Therefore, the trial court could conclude that the extraneous offenses did not tend to suggest a decision on an improper or emotional basis instead of a rational basis. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (tendency to suggest decision on improper basis is "ameliorated somewhat by the fact that the . . . [extraneous] actions were no more serious than the allegations forming the basis for the indictment"). This is especially so in light of the trial court's "limiting instruction[, which] can minimize the risk of the jury improperly relying on [extraneous-offense evidence] in reaching its verdict." *James*, 623 S.W.3d at 549. Here, the trial court instructed the jury that it could consider the extraneous offenses only if they determined beyond a reasonable doubt that Norvell committed them and then only to determine the nature of

15

the relationship in connection with the indicted offense or for the limited purpose to show Norvell's motive, opportunity, intent, identity, or absence of mistake or accident. The trial court further instructed the jury,

> You may not consider this evidence to prove the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should only consider this evidence for the specific, limited purpose I have prescribed. To consider this evidence for any other purpose would be improper.

"We presume that the jury followed the trial court's limiting instructions." *Id.* (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). Because of the limiting instruction and the trial court's charge, which focused the jury on the offense in the indictment, we find that the extraneous-offense evidence would not tend to confuse or distract the jury from the main issues in the case, but instead provided a more complete picture of the nature of the relationship between Shaw and Norvell so that the jury could understand their behavior on the day of the offense. *See id.* at 550. Because the evidence was not scientific or complex, nothing suggested that the jury would give the evidence undue weight or would otherwise be misled by it. *Id.* We find that the third, fourth, and fifth *Gigliobianco* factors weigh in favor of admission.

As for the last factor, Norvell alleges, and the State concedes, that the presentment of the extraneous offenses consumed a substantial amount of time. Even so, this does not tip the scale against admission of the six extraneous offenses. *See id.* at 551 (concluding that trial court did not abuse its discretion in overruling Rule 403 objection even when State conceded final *Gigliobianco* factor).

16

After balancing all six *Gigliobianco* factors, we conclude that the trial court did not abuse its discretion in overruling Norvell's objection under Rule 403. As a result, we overrule Norvell's last point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     April 14, 2022
Date Decided:      May 13, 2022

Do Not Publish