

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00155-CR

JULIAN MEDINA-MONTGOMERY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2430284

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

After a Hopkins County jury found Julian Medina-Montgomery guilty of theft of property in an amount more than $30,000.00, but less than $150,000.00,[1] he was sentenced to six years and six months' confinement in prison. Medina-Montgomery appeals, maintaining that the trial court erred when it admitted evidence of his "extraneous drug use" because (1) the evidence was not relevant and (2) even if the evidence were "marginally relevant," it was more prejudicial than probative. Because we find that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice, we affirm the judgment of the trial court.

## I.      Background

On November 2, 2023, Medina-Montgomery entered a Red River Credit Union (Red River) located in Sulphur Springs and completed a commercial account questionnaire. In the questionnaire, Medina-Montgomery identified his company as "AIMES," included an employer identification number, and then signed the application as "Allen Borovich." Medina-Montgomery also answered several other questions in a variety of documents, identifying himself as Allen Borovich and his company as AIMES or AIMES LLC. In addition, Medina-Montgomery provided Red River with a copy of a Louisiana Secretary of State's certification that AIMES LLC's articles of organization were filed and recorded in the secretary of state's

---

[1]*See* TEX. PENAL CODE ANN. § 31.03(e)(5) (Supp.).

2

office on October 30, 2023.[2]  Red River asked for, and was provided, a Pennsylvania driver's license that purportedly belonged to Borovich.  After completing the paperwork and providing Red River with the necessary documentation, Medina-Montgomery successfully opened an account.  He then deposited into his bank account what appeared to be a United States Treasury Check in the amount of $138,545.58.

Denise Fulk, the branch manager of Red River in Sulphur Springs, confirmed that Medina-Montgomery opened an account at Red River under the name of Allen Borovich. Explaining some of the transactions that had occurred in Medina-Montgomery's account, Fulk testified that, after Medina-Montgomery initially deposited the $138,545.58 treasury check into his account, Red River placed a "hold" on the funds for nine days.  On November 13, 2023, Red River received verification "that the funds were good, and so [Fulk] took the funds off of hold." On November 15, 2023, Medina-Montgomery went to Red River intending to withdraw all of the money in his account.  The teller supervisor verified the check he gave her, but because "it just didn't make sense," she allowed him to withdraw only $7,300.00.

On November 20, 2023, Medina-Montgomery went to Red River's Greenville branch wanting to withdraw all of the money from his account.  Having an uneasy feeling about his request, "the branch manager or the teller supervisor in the Greenville office checked with her branch manager" and then issued a cashier's check to Medina-Montgomery in the amount of $125,000.00 and also gave him $6,000.00 in cash.  The next day, Medina-Montgomery deposited

---

[2]The State offered, and the trial court admitted, several more bank documents and records that Red River used in its regular course of business.  All of those documents were signed by Borovich or identified Borovich's purported company as AIMES LLC.

3

$125,000.00 into his bank account but also withdrew $15,000.00. After many more withdrawals at the Greenville branch, Medina-Montgomery withdrew $15,000.00 from Red River's Paris branch.[3]

On December 5, 2023, when Medina-Montgomery entered the bank, Fulk took him to her office and asked him "along the lines of 'what do you need this much cash for?'" According to Fulk, Medina-Montgomery's response was unsatisfactory. Fulk testified that she had contacted the risk department prior to going into her office with Medina-Montgomery and that, while Fulk and Medina-Montgomery were talking, the risk department employees were observing them via the bank's security cameras. The police department was contacted, and when they arrived, they ran Medina-Montgomery's Pennsylvania driver's license. He was subsequently arrested.

Hannah Bywater, an employee at Red River's Greenville branch, testified that she interacted with Medina-Montgomery during various transactions. According to Bywater, she first had contact with Medina-Montgomery in November 2023. Bywater recalled that particular interaction, stating,

> He came into the branch asking for a withdrawal of money. He spoke very little. He -- it was very hard to make eye contact. He barely answered the questions that I had for him, which are just general questions that we ask every member. He just seemed like a fish out of water. He was very uncomfortable.

Over Medina-Montgomery's objections,[4] Bywater also testified that there were additional red flags regarding Medina-Montgomery's behavior. She stated, "He wasn't very direct, asking

---

[3]Several more witnesses testified at trial. Some of them explained in more detail how Medina-Montgomery committed the charged offense.

[4]After conducting a Rule 403 balancing test, the trial court gave the jury an instruction that it could consider Bywater's testimony "for the very limited purpose of showing the circumstances of the transaction at the Greenville

4

for such a large transaction. That was a red flag. He smelled like marijuana. That was a huge red flag for someone owning an account like that being presented, and -- not being direct and smelling like marijuana." Bywater also testified that it was difficult for her to talk to Medina-Montgomery and that he had problems forming his sentences. She explained, "In my line of work, we have questions that we ask. He couldn't answer those questions very well. They were very, very, if anything very short. He would not make eye contact with me. It was all very off."

Further, Bywater testified that, in addition to Medina-Montgomery's behavior, she also considered that his account was fairly new and that it contained a large amount of money. She said that "typically, when people that have [those] kind of accounts, have large money in it, when they come in to speak to us, they're sure of themselves, they can form sentences, they know what they're asking for. That did not seem to be the case here." Based on those red flags, Bywater called the risk department.

## II. Standard of Review

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it

branch with this particular witness." *See* TEX. R. EVID. 403. Along with the limiting instruction, the trial court also gave the jury a reasonable-doubt instruction.

5

was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

## III.  Discussion

On appeal, Medina-Montgomery argues that the trial court erred when it allowed the jury to hear Bywater's testimony regarding his "extraneous drug use" because it (1) was not relevant and (2) was more prejudicial than probative.

### A.  Relevant Evidence

Specifically, Medina-Montgomery complains about Bywater's testimony that he was "on something more than just marijuana." He maintains that the complained-of testimony "had no logical relevance to anything other than showing [his] action [was] in conformity with a general character for criminal behavior.

Rule 402 of the Texas Rules of Evidence provides that all "[r]elevant evidence is admissible." TEX. R. EVID. 402. Rule 401 defines relevance as having any tendency to make the existence of any fact that is of consequence to the determination of the action "more or less probable than it would be without the evidence." TEX. R. EVID. 401. "The threshold for relevance under Rule 401 is very low," *Haley v. State*, 173 S.W.3d 510, 520 (Tex. Crim. App. 2005) (Keller, P.J., concurring), and the evidence "need not prove the point by itself," *Beham v. State*, 559 S.W.3d 474, 482 (Tex. Crim. App. 2018).

First, we can find no place in the record where Bywater testified that Medina-Montgomery was "on something more than just marijuana." Moreover, Medina-Montgomery did not direct us to any place in the record where Bywater made that statement. However, the

State did make a similar statement to the trial court outside the presence of the jury. When the trial court concluded that Bywater's testimony on the issue was a point of contention between the parties, it gave them the opportunity to question Bywater outside the presence of the jury. After Bywater answered their questions, the State informed the trial court as follows:

> I want to let the Court know, so based off what I heard, what I would ask is, did he come in? Did he smell like weed? Did he have trouble forming sentences and interacting with you like a normal person? I won't ask if you think he was intoxicated on more than marijuana or even intoxicated, but I still think the fact that he smells like weed and can't form a sentence with her undercuts the idea that this is a legitimate thing . . . .

Medina-Montgomery was charged and tried for the offense of theft of property in an amount of more than $30,000.00, but less than $150,000.00. In order to commit the alleged theft, Medina-Montgomery was required to interact with bank employees. The trial court could have believed that the evidence regarding Medina-Montgomery smelling of marihuana was relevant because it was an additional factor that led to Bywater's concern about Medina-Montgomery's awkward behavior, which also included being unable to speak correctly, unable to answer general questions, and failure to make eye contact with bank employees. All of those factors led Bywater to question the legitimacy of Medina-Montgomery's transactions. On the other hand, Bywater explained that people who are in the bank for a legitimate purpose are commonly able to enunciate their words, answer questions, and make eye contact and that they do not smell of marihuana. Furthermore, Bywater testified that she had served many customers at the bank and, therefore, she was aware of different mannerisms, behavior, and overall presentation.

7

Thus, the State did not offer the evidence to prove that Medina-Montgomery used drugs or to show he was, in general, a criminal. Instead, it offered the evidence to show the circumstances surrounding his awkward behavior and why that raised concerns about the legitimacy of the bank transactions. As a result, we find that the trial court's decision to allow Bywater's testimony about the smell of marihuana fell within the zone of reasonable disagreement and was not an abuse of discretion.

We, therefore, overrule Medina-Montgomery's first point of error.

### B. Rule 403 and 404(b) Analysis

Next, Medina-Montgomery maintains that the trial court erred in admitting evidence of his "extraneous drug use" because it was unfairly prejudicial in violation of Rule 403 and Rule 404(b) of the Texas Rules of Evidence." As we have already discussed, the only evidence the jury heard was that Medina-Montgomery smelled of marihuana.

Under Rule 404(b), "evidence of other crimes, wrongs, or acts is not admissible 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *Davison v. State*, 602 S.W.3d 625, 651 (Tex. App.—Texarkana 2020, pet. ref'd) (quoting TEX. R. EVID. 404(b)(1)). "But it may 'be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, . . . absence of mistake, or lack of accident.'" *Id.* (quoting TEX. R. EVID. 404(b)(2)). "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343).

"Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343)). "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343).

When a trial court is tasked with determining whether an extraneous offense or bad act should be admitted, it does so with a Rule 403 analysis. Rule 403 states that, although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Furthermore, "[w]hether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). "So, too, is a ruling on the balance between probative value and the counter factors set out in Rule 403, although the balance is always slanted toward admission, not exclusion, of otherwise relevant evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (citing *Montgomery*, 810 S.W.2d at 388). In respect to a trial court's Rule 403 ruling, an appellate court reviews its decision for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). If the ruling is "within the zone of reasonable disagreement," there is no abuse of discretion. *James v. State*, 555 S.W.3d 254, 260 (Tex. App.—Texarkana 2018, pet. dism'd, untimely filed) (citing *De La Paz*, 279 S.W.3d at 343–44)).

9

In *Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006), the Texas Court of Criminal Appeals explained that the term "probative value" means "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* at 641. "'[U]nfair prejudice,' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)).

When analyzing a trial court's Rule 403 ruling regarding extraneous-offense evidence, we assess whether, under the circumstances of this case, the following factors were in the zone of reasonable disagreement:

> (1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable, (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the extraneous offense evidence.

*James*, 555 S.W.3d at 260 (quoting *Hartsfield v. State*, 305 S.W.3d 859, 873 (Tex. App.—Texarkana 2010, pet. ref'd)). Ultimately, "Rule 403 favors admissibility, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).

As to the first factor, Bywater's testimony that Medina-Montgomery smelled of marihuana was compelling to the extent it was part and parcel of her opinion that he was not in the bank with the intent of making legitimate transactions. Yet, it was no more compelling than Bywater's testimony that Medina-Montgomery was incapable of speaking correctly, unable to

10

answer general questions, and unwilling or unable to make eye contact with bank employees. The trial court could have reasonably concluded that that factor favored admission.

Second, there was very little, if any, potential that the complained-of evidence would impress the jury in some irrational way. Bywater explained that her prior work experience enabled her to opine that Medina-Montgomery was not in the bank for a valid reason. She testified to the differences between the behavior of a legitimate customer and a customer who is in the bank for inappropriate or illegal reasons. Yet, Medina-Montgomery argues that the "evidence of [his] appearance and demeanor were one thing, but evidence that [he] also (inferentially) committed a separate offense – possession and/or consumption of a controlled substance, to wit: marijuana – was quite another."

Despite Medina-Montgomery's assertion, Bywater testified only to the fact that Medina-Montgomery smelled of marihuana, and nothing more. She did not state that he had been smoking marihuana or taking another illegal substance, and she did not testify that he was in possession of any type of illicit drug or that he was intoxicated. Furthermore, Bywater placed no more importance on the fact that she believed Medina-Montgomery smelled of marihuana than she did any of the other odd behavior Medina-Montgomery exhibited. Likewise, the State did not highlight that portion of Bywater's testimony during trial. And, in their closing arguments, neither party even mentioned Bywater's testimony that Medina-Montgomery smelled of marihuana. The trial court could have reasonably concluded that that factor favored admission.

Third, the trial transcript consists of about 610 pages. Yet, this particular issue was addressed in about eleven of the 610 pages. Those pages contain Medina-Montgomery's

11

objection to Bywater's testimony, both parties taking Bywater on voir dire, hearing the parties' arguments on the issue, and hearing Bywater's testimony in front of the jury. In other words, this evidentiary issue did not require a significant amount of time to resolve. The trial court could have reasonably concluded that that factor favored admission.

Lastly, we look at the State's need for the complained-of testimony. In his brief, Medina-Montgomery argues,

> The State could (and did) point to evidence that Appellant used a fake ID to open an account at Red River Credit Union, and that he continued to use it to access funds deposited into the account. The State could (and did) point to evidence that Appellant systematically withdrew suspiciously high dollar amounts from various bank locations across Texas and Louisiana in a short amount of time. The State could (and did) point to evidence that Appellant appeared at the bank with "long, unkempt hair" and a "long, unkempt beard," that he was poorly dressed, and that he "didn't present like a businessman" . . . . The State further could (and did) emphasize the manner in which he held himself, answered questions, and even parked his car as evidence of "red flags" of impropriety. If the State simply hoped to establish such "red flags," it could do so without resort to his consumption of marijuana or his apparent intoxication "on something more than just marijuana . . . ."[5] In other words, the State had very little need to present evidence of marijuana consumption, or of intoxication on some unknown substance, and such evidence therefore had very little probative value.

(Footnote omitted).

The State did, in fact, present a fair amount of "red-flag" evidence to support its contention that Medina-Montgomery was acting in a manner consistent with someone who intended to make an illegal bank transaction, and not a person who was in the bank for legitimate

---

[5]Again, Medina-Montgomery cites to the portion of the record that shows the trial court and the parties in the middle of a bench conference on the issue of whether Medina-Montgomery was "on something more than just marijuana." Within seconds, the trial court asked the jury to leave the courtroom so that it could take up the matter outside the presence of the jury. The parties then asked Bywater numerous questions on the subject. After she answered their questions, the State indicated to the court that it would not ask Bywater if Medina-Montgomery "was intoxicated on more than marijuana or even intoxicated."

reasons, as Medina-Montgomery wanted the jury believe. Bywater's testimony that Medina-Montgomery smelled of marihuana was merely one more factor by which she reached her opinion that he was not there for legitimate purposes. Even so, given all the other evidence that the State presented regarding Medina-Montgomery's strange behavior and his other peculiar characteristics, it does not appear that the State needed Bywater's testimony regarding the smell of marihuana on his person.

That said, even though the fourth factor falls in favor of exclusion of Bywater's testimony regarding the smell of marihuana, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak*, 420 S.W.3d at 811 (citing TEX. R. EVID. 403). "Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Id.* (citing *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002)). Instead, the complained-of evidence must be unfairly prejudicial. *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002).

In Medina-Montgomery's argument above, he states that there was already enough "red-flag" evidence for the jury to assess his behavior while in the bank. While that may be true, we do not believe that Bywater's testimony that Medina-Montgomery smelled of marihuana amounted to unfair prejudicial evidence. As a result, we find that this ruling was within the zone of reasonable disagreement, and, therefore, the trial court did not abuse its discretion. For these reasons, we overrule Medina-Montgomery's second point of error.

13

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted: April 16, 2025
Date Decided: May 27, 2025

Do Not Publish