

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

————————————————

No. 02-24-00155-CR

————————————————

CURTIS MARTIN PYLE, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1710840

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Appellant Curtis Martin Pyle of assault-family violence with a prior conviction stemming from his July 2021 assault of his on-and-off-again girlfriend, A.P.[1] *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). The jury found certain habitual-offender allegations contained in the indictment to be true, and they assessed Pyle's punishment at twenty-five years' confinement. The trial court sentenced him accordingly. In one point on appeal, Pyle argues that the trial court abused its discretion by admitting certain extraneous-offense evidence at his trial concerning his prior assaults of A.P. Because the trial court did not abuse its discretion by admitting the complained-of evidence—and because even if the trial court had abused its discretion, Pyle has not been harmed by the admission of the complained-of evidence—we will overrule his sole point. However, because the trial court's judgment contains certain clerical errors, we will modify the judgment to correct them, and we will affirm the trial court's judgment as modified.

---

[1]To protect the complainant's anonymity, we will use her initials to refer to her. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

## II.  BACKGROUND

### A.  Pyle Begins a Relationship with A.P.

Pyle met A.P. in 2016.  They began dating in November 2019, and Pyle moved in with A.P. in January 2020.  According to A.P., the relationship started off well, but within a few months, "things kind of went south."

### B.  Pyle's April 2020 Assault of A.P.

On April 25, 2020, A.P. was cleaning up her residence and emptying water bottles.  Pyle became mad because he could not find a specific bottle that he wanted, and he accused A.P. of taking it, hiding it, or emptying it.  While Pyle was searching for the missing bottle, he grabbed A.P. by the hair and threw her to the ground.  Her face hit the ground, cracking several of her teeth and requiring her to later get dental work.[2]  A.P. testified that she did not report the April 2020 assault to police because she loved Pyle and did not want him to get into trouble.

### C.  Pyle's March 2021 Assault of A.P.

One day in March 2021, Pyle and A.P. began to argue over bills.[3]  The argument escalated when A.P. refused to give Pyle the keys to her car.  Pyle started throwing things, including a chair.  He then grabbed A.P., threw her down, and pushed her face to the side.  A.P. described Pyle's pushing of her face as an attempt

---

[2]After Pyle threw her to the ground, A.P. began recording their argument on her phone.  The audio of that recording was admitted at Pyle's trial.

[3]The record does not clearly establish the specific date that this event occurred.

3

"to break [her] neck." A.P. thought she was going to die. A.P. did not call the police regarding the March 2021 assault because she did not want to provoke Pyle or get him into trouble.

**D. Pyle's July 2021 Assault of A.P.**

On the morning of July 6, 2021, Pyle and A.P. were initially having a good time together at their residence. Things changed, however, when A.P. mentioned that bills were due. At that point, Pyle asked to borrow A.P.'s car, and she refused.[4] Her refusal angered Pyle; he began picking things up and throwing them. She asked him to leave the residence, but he refused. The dispute escalated when both Pyle and A.P. made negative comments about each other's respective parents, and Pyle "aggressively came forward at [A.P.]" and "lunge[d] towards [her]." Pyle "put his hand over [A.P.'s] whole face and pushed" her glasses in, causing the glasses to break and cut her nose. A.P. attempted to run away from Pyle, and he began "swinging" at her. While none of his "swings" contacted A.P., during one such "swing," she ducked, causing him to shatter the glass door of a microwave.

A.P. tried to run out the back door of the residence, but Pyle grabbed her by her hair and took her into the bedroom. He laid her down on an ottoman at the foot of the bed, and he put his knee on her and pinned her down. While A.P. was screaming, Pyle "tried to push all [of her] teeth in" and was "gouging at [her] eyes."

---

[4]A.P. explained that she did not allow Pyle to drive her car because he did not have a driver's license and was not listed on her car insurance.

A.P. thought she was going to die. And for good reason—during the attack, Pyle told her, "I want you to die," "I wish you were dead," and "I hate you." The assault stopped when a neighbor yelled, "I'm calling the police."

Pyle left the residence, and he sent a text message to A.P.'s best friend, Susan, telling her that she was probably going to be mad at him because he had hurt A.P. That afternoon, Susan went to A.P.'s house. Susan observed that A.P. had blood on her face and "bruises all over her." She also observed that A.P. was "[v]ery upset" and "scared." Susan told A.P. that she should file charges against Pyle because he would "end up killing [her]." Susan told the jury that she had seen marks on A.P. on other occasions, mentioning "a bite mark on [A.P.'s] back, scrapes, handprints, [and] a lot of bruises." Susan also testified that she had seen Pyle shove A.P. on one occasion.

A.P. used Susan's phone to call the police.[5] During the call, A.P. explained that she had been assaulted by Pyle earlier that day and that she wished to file charges and obtain a restraining order against him.

That evening, Officer Fernando Orozco of the Fort Worth Police Department was dispatched to A.P.'s residence. When he arrived at the scene, Orozco observed bruising to A.P.'s arm and scratches on her face. A.P. told Orozco that Pyle had assaulted her. Orozco took photographs of A.P.'s injuries and the scene of the

---

[5]A.P. testified that Pyle had broken her phone during the July 2021 assault.

5

assault. Those photographs depict the broken microwave and A.P.'s broken cell phone, and show A.P. with marks on her arm, face, and neck.

At trial, A.P. testified about the injuries she sustained during the July 2021 assault. She stated that she had marks on her neck, cuts on her face, and bruises on her arms. A.P. also said that her "neck still pops to this day" as a result of the injuries she sustained during the assault. A.P. also testified that she had been reluctant to call the police about the July 2021 assault, noting that she probably would not have called the police but for Susan's insistence. A.P. also said that she had at one time signed an affidavit of nonprosecution, stating that she had done so because she was scared of Pyle.

### E. Procedural Background

Pyle was indicted for the July 2021 assault, and at trial, A.P. testified regarding the assault. The State also indicated that it wished to introduce evidence regarding Pyle's prior assaults of A.P. Pyle objected, arguing that evidence of the prior assaults should be excluded based on Texas Code of Criminal Procedure Article 38.371, Texas Rule of Evidence 403, and Texas Rule of Evidence 404(b).[6] *See* Tex. Code Crim. Proc. Ann. art. 38.371; Tex. R. Evid. 403, 404(b). The trial court overruled Pyle's

---

[6]As to the recording that A.P. made on the day of the April 2020 assault, Pyle also objected that there was a lack of due process "[u]nder Article 1, Section 13 [of the Texas Constitution], and the Fifth and Fourteenth Amendments [of the United States Constitution]." *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 13. The trial court overruled those objections.

objections, and it admitted evidence regarding Pyle's prior assaults of A.P. The jury ultimately convicted Pyle of the July 2021 assault.

## III. DISCUSSION

In his sole point, Pyle argues that the trial court abused its discretion by admitting evidence pertaining to his prior assaults of A.P.[7]

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). Under that standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)). If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. Pyle's Article 38.371 Complaint

We begin by discussing Pyle's contention that the trial court's admission of the complained-of evidence violated Article 38.371. *See* Tex. Code Crim. Proc. Ann. art. 38.371.

---

[7]More specifically, Pyle's sole point of error provides, "The trial court abused its discretion by admitting extraneous conduct that violated the Texas Rules of Evidence 401, 402, 403[,] and 404(b), Article 38.371, Texas Code of Criminal Procedure, the Fifth and Fourteenth Amendments to the United States Constitution[,] and Article I, Section 13 of the Texas Constitution."

### 1. Applicable Law

Article 38.371—which applies to prosecutions for offenses committed against a member of the defendant's family, household, or a person in a dating relationship with the defendant—expressly allows "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship" between the victim and the defendant. *Id.* art. 38.371(b). "Thus, Article 38.371(b) expressly provides for the admission of extraneous[-]offense evidence regarding the nature of the relationship between [the victim and the defendant]." *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *4 (Tex. App.—Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (first citing *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.); and then citing *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at *4–5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication)).

### 2. Analysis

Here, the evidence pertaining to Pyle's prior assaults against A.P. sheds light on the nature of their relationship—the volatile nature of that relationship and A.P.'s past reluctance to call the police regarding Pyle's violence due to her love for him and her fear of him. Thus, that evidence was admissible under Article 38.371. *See James*, 623 S.W.3d at 546 ("All the extraneous-offense evidence James complains of shows

8

the nature of his relationship with Jane and was admissible under Article 38.371(b)."); *Brickley v. State*, 623 S.W.3d 68, 81 (Tex. App.—Austin 2021, pet. ref'd) (holding that evidence of past abuse was admissible under Article 38.371 "because it contextualized the nature of the relationship between [the defendant] and [the victim] and helped explain some of [the victim's] conduct during the incident and her hesitancy in reporting the offense"); *Mourning*, 2020 WL 6165309, at *5 (holding that trial court did not abuse its discretion by admitting evidence of defendant's drug abuse under Article 38.371 because said evidence "was relevant to explaining the nature of [the defendant's] relationship [with the victim]"). We thus reject Pyle's Article 38.371 complaint.

The admission of evidence under Article 38.371 must still be otherwise admissible under the Texas Rules of Evidence—including Rules 403 and 404(b)—in order to be admitted. Tex. Code Crim. Proc. Ann. art. 38.371; *Patterson v. State*, No. 02-23-00012-CR, 2024 WL 1207306, at *8 (Tex. App.—Fort Worth Mar. 21, 2024, pet. ref'd) (mem. op., not designated for publication); *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *6 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication).

## C. Pyle's Rule 404(b) Complaint

We first address Pyle's Rule 404(b) complaint.

9

### 1. Applicable Law

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Tex. R. Evid. 401. Relevant evidence is generally admissible. Tex. R. Evid. 402. Rule 404(b)(1), however, precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion. Tex. R. Evid. 404(b)(1). Rule 404(b)(2) allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2).

The purposes listed in Rule 404(b)(2) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Indeed, extraneous-offense evidence may also be introduced to rebut a defensive theory. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); *Richardson v. State*, 328 S.W.3d 61, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam). Thus, while Rule 404(b) limits character evidence, it is nevertheless a rule of inclusion. *De La Paz*, 279 S.W.3d at 343; *Gaulding*, 2022 WL 17986026, at *4.

### 2. Analysis

In its brief, the State argues that the complained-of extraneous-offense evidence was admissible because it was offered to show the nature of Pyle and A.P.'s relationship. We agree. As noted in our discussion of Article 38.371, the complained-

10

of evidence—which reflected past instances of domestic violence between Pyle and A.P., their volatile on-again-off-again relationship, and her reluctance to bring charges against him due to her love for him and her fear of him—gave the jury important insight into the nature of their relationship. *See Baxter v. State*, No. 02-22-00258-CR, 2023 WL 8268292, at *9 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that prior incidents of domestic violence between defendant and victim, his controlling demeanor over her, and her fear of him were admissible under Article 38.371 and Rule 404(b)); *Gaulding*, 2022 WL 17986026, at *4 (similar); *James*, 623 S.W.3d at 545 ("Article 38.371, which applies to family-violence prosecutions, provides another non-character-conformity purpose for admitting extraneous-offense evidence."); *Mourning*, 2020 WL 6165309, at *5 ("[The defendant's] history of drug use—and [the victim's]—gave the jury insight into the nature of their volatile relationship."). Because the complained-of evidence showed the nature of Pyle and A.P.'s relationship, it was admissible for that purpose under Article 38.371, as well as Rule 404(b). *See* Tex. Code Crim. Proc. Ann. art. 38.371; Tex. R. Evid. 404(b); *Patterson*, 2024 WL 1207306, at *8 (holding that the complained-of evidence, which "gave the jury important insight into the nature of [the] relationship" between the victim and the defendant, was admissible under both Article 38.371 and Rule 404(b)).

The State also argues that that the complained-of extraneous-offense evidence was admissible because it rebutted Pyle's defensive theory that A.P. was fabricating

11

her allegations regarding the July 2021 assault. We agree. At trial, Pyle's counsel suggested to the jury that A.P. had fabricated the July 2021 assault because she was upset that Pyle was dating another woman. Pyle's counsel argued that it was illogical for A.P. to have called the police regarding that assault when she had not called the police after the April 2020 and March 2021 assaults. To Pyle's counsel, that suggested that "none of this happened." Thus, evidence of Pyle's prior assaults of A.P. helped rebut his defensive theory that she was making up the allegations regarding the July 2021 assault. *See Fillmore v. State*, No. 03-22-00504-CR, 2024 WL 3586040, at *2 (Tex. App.—Austin July 31, 2024, no pet.) (mem. op., not designated for publication) ("Rule 404(b)(2) allows admitting extraneous-act evidence when the evidence rebuts a defensive theory of fabrication."); *Laube v. State*, No. 05-13-00242-CR, 2014 WL 2993823, at *5 (Tex. App.—Dallas June 30, 2014, no pet.) (mem. op., not designated for publication) (holding that extraneous-offense evidence was admissible to rebut the defensive theory of fabrication); *see also Foster v. State*, No. 01-17-00537-CR, 2018 WL 1914871, at *5 (Tex. App.—Houston [1st Dist.] Apr. 24, 2018, pet. ref'd) (mem. op., not designated for publication) ("In this case, the proof that Foster had physically abused Kim on other occasions rebutted Foster's evidence tending to show that Kim either consented to Foster's conduct or had exaggerated her injuries.").

We reject Pyle's Rule 404(b) complaint.

## D. Pyle's Rule 403 Complaint

We next turn to Pyle's Rule 403 complaint.

12

### 1. Applicable Law

Under Rule 403, a trial court may exclude relevant evidence if the probative value of the evidence "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich*, 2019 WL 311153, at *7.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James*, 623 S.W.3d at 546–47 (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich*, 2019 WL 311153, at *7). Thus, the balance in evaluating the admission of evidence under Rule 403 "is always slanted toward admission of relevant evidence." *Fernandez v. State*, No. 02-18-00483-CR, 2020 WL 1057323, at *6 (Tex. App.—Fort Worth Mar. 5, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *De La Paz*, 279 S.W.3d at 343 & n.17). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403. *Gaulding*, 2022 WL 17986026, at *5; *James*, 623 S.W.3d at 547.

To determine whether evidence is admissible over a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts

must balance the following factors (the *Gigliobianco* factors): (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### 2. Analysis

As to the first *Gigliobianco* factor—the inherent probative force of the proffered evidence—we conclude that the evidence was highly probative to show Pyle's relationship with A.P. and to rebut his defensive theory that she was fabricating the July 2021 assault. As discussed above during our analysis of Rule 404(b), the central issue in this case was whether A.P. was fabricating the July 2021 assault. Thus, the complained-of evidence—which reflected past instances of domestic violence between Pyle and A.P., their volatile on-again-off-again relationship, and her reluctance to press charges against him—was highly probative. *See Baxter*, 2023 WL 8268292, at *11 (holding that evidence of "past instances of domestic violence" between defendant and victim, his controlling demeanor over her, and her fear of him were "highly probative"); *James*, 623 S.W.3d at 548 (holding that "the probative value of the extraneous-offense evidence was strong" when it "was probative of the nature

14

of [the defendant's] abusive relationship with [the victim]" and it "rebut[ted] the defensive theory of fabrication"). This factor weighs in favor of the admission of the complained-of evidence.

As to the second *Gigliobianco* factor—the proponent's need for the evidence—there was no eyewitness testimony regarding the July 2021 assault other than the testimony presented by A.P. In the absence of such eyewitness testimony, the complained-of evidence was needed to support the State's theory that A.P. was not fabricating or exaggerating her allegations of assault and to explain A.P.'s reluctance to contact authorities regarding the July 2021 assault. *See McDonnell v. State*, 674 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (holding that defendant's prior assaults and threats against victim were "particularly relevant whe[n] the credibility of the witnesses was a central issue in the case" and that the need for the extraneous-offense evidence was high because of the victim's continued association with the defendant after the assault); *James*, 623 S.W.3d at 548 ("The State also had a strong need for the extraneous-offense evidence because no one witnessed the charged offenses."); *McGregor v. State*, 394 S.W.3d 90, 122 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding that State had need for evidence—thus favoring admissibility of complained-of extraneous-offense evidence—when there were no eyewitnesses to the subject crime). This factor weighs in favor of the admission of the complained-of evidence.

15

As to the third through fifth *Gigliobianco* factors—any tendency of the evidence to suggest a decision on an improper basis, any tendency of the evidence to confuse or distract the jury, and any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight—we note that the trial court gave the jury the following limiting instruction,

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed crimes, wrongs, or acts other than the crime alleged in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts, if any were committed, and even then you may only consider those other crimes, wrongs, or acts in determining the proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any, in connection with the crime alleged in the indictment in this case, and for no other purpose.
>
> . . . .
>
> You are instructed that if there is any evidence before you in this case regarding the Defendant having committed other crimes, wrongs, or acts against [A.P.], you cannot consider said evidence for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other crimes, wrongs, or acts, if any were committed, and even then you may only consider the same for its bearing on relevant matters including the state of mind of the Defendant and [A.P.] and the previous and subsequent relationship between the Defendant and [A.P.].

We are to presume that the jury followed the trial court's instruction. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Although this presumption is rebuttable, an appellant has the burden to refute it by pointing to evidence that the jury failed to follow the trial court's instructions. *Id.* Here, Pyle has not pointed to

any evidence that demonstrates that the jury failed to follow the trial court's limiting instruction. *See Baxter*, 2023 WL 8268292, at *11 (rejecting argument that jury would be confused by evidence or would use it for an improper purpose where trial court gave limiting instruction and appellant did not suggest that jury failed to follow instruction); *Gaulding*, 2022 WL 17986026, at *6 ("These instructions—which we presume the jury followed—equipped the jury to weigh the extraneous[-]offense evidence properly and minimized the risk of the jury's improperly relying on such evidence in reaching its verdict." (citation omitted)).

Further, we note that the April 2020 and March 2021 assaults were no more heinous than the charged offense—the July 2021 assault. Thus, the risk of unfair prejudice was relatively low. *See Gaulding*, 2022 WL 17986026, at *7 ("[B]ecause the extraneous offenses were no more heinous than the charged offenses, the risk of unfair prejudice was relatively low."); *Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also James*, 623 S.W.3d at 549 (holding that third *Gigliobianco* factor weighed in favor of admission of extraneous-offense evidence that was "not more heinous than the charged offenses" but against admission of extraneous-offense evidence that was more heinous than the charged offenses).

Moreover, we note that the complained-of evidence was not scientific in nature, nor was it overly complex; thus, there was little risk of jury confusion. *See Gaulding*, 2022 WL 17986026, at *6 ("[B]ecause the evidence was not scientific or complex, there was little risk of jury confusion."); *James*, 623 S.W.3d at 550 ("Our review of the record shows that the extraneous-offense testimony was from lay witnesses, not experts, and it described the various abusive incidents in a factual manner. None of the extraneous-offense evidence was scientific or complex."). These factors weigh in favor of the admission of the complained-of evidence.

As to the sixth *Gigliobianco* factor—the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted—the complained-of testimony pertaining to Pyle's prior assaults against A.P. consumed approximately twelve pages of the over-350 pages of the reporter's record comprising the two-day guilt–innocence phase of Pyle's trial. In light of this record, we hold that the presentation of the complained-of extraneous-offense evidence did not consume an inordinate amount of time during Pyle's trial. *See Deggs v. State*, 646 S.W.3d 916, 927 (Tex. App.—Waco 2022, pet. ref'd) (holding that extraneous-offense evidence that comprised "approximately ten pages of the over-250 pages of the reporter's record" did not consume an inordinate amount of time at trial); *Robisheaux v. State*, 483 S.W.3d 205, 221 (Tex. App.—Austin 2016, pet. ref'd) (holding that extraneous-offense evidence did not consume an inordinate amount of time when it took up eight pages of the reporter's record that was

18

"hundreds of pages long").  Thus, this factor weighs in favor of the admission of the complained-of evidence.

Balancing all six of the *Gigliobianco* factors, we hold that the trial court did not abuse its discretion by determining that the probative value of the complained-of evidence was not substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  Tex. R. Evid. 403.  We thus reject Pyle's Rule 403 complaint.[8]

## E. No Harm

Even if we assumed that the trial court abused its discretion by admitting the complained-of evidence, the record does not establish harm.  Error in the admission of extraneous-offense evidence is generally not constitutional error.  *Perez v. State*, 562 S.W.3d 676, 691 (Tex. App.—Fort Worth 2018, pet. ref'd); *James v. State*,

---

[8]We have now rejected Pyle's complaints under Article 38.371 and Rules 403 and 404(b).  In his "Point Presented for Review" section of his brief, Pyle states that the trial court's admission of the complained-of evidence also violated "Texas Rules of Evidence 401 [and] 402," in addition to violating "[t]he Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Texas Constitution."  Yet, in the body of his brief, Pyle does not advance any argument as to how the trial court's admission of the complained-of evidence violated those legal precepts.  A brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  Tex. R. App. P. 38.1(i).  We thus hold that he has inadequately briefed any complaint regarding the trial court's admission of the complained-of evidence other than his complaints regarding Article 38.371, Rule 403, and Rule 404(b).  *See Urdaneta v. State*, No. 02-23-00338-CR, 2024 WL 4377442, at *8 n.13 (Tex. App.—Fort Worth Oct. 3, 2024, no pet.) (mem. op., not designated for publication) (holding that appellant inadequately briefed point that did not offer a clear and concise argument for the contention made).

555 S.W.3d 254, 261 (Tex. App.—Texarkana 2018, pet. dism'd, untimely filed). Because the error is not constitutional, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b). That rule requires us to disregard any nonconstitutional error that does not affect the appellant's substantial rights. *Id.* A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

We note that there was strong evidence establishing Pyle's guilt for the July 2021 assault of A.P. In this regard, A.P. testified at length regarding the July 2021 assault. Among other things, she described how Pyle "put his hand over [her] whole face and pushed," causing her glasses to break and her nose to be cut. She described Pyle "swinging" at her and shattering the glass door of a microwave. According to

20

A.P., Pyle grabbed her by the hair, placed her on an ottoman at the foot of the bed, put his knee on her body, and pinned her down. Pyle also tried to "push all [of her] teeth in" and "goug[ed] at [her] eyes." A.P. thought that she was going to die during the assault, noting that Pyle had told her during the assault that he wanted her to die.

On the day of the July 2021 assault, A.P. made statements to Susan and the police indicating that Pyle had assaulted her. That same day, Susan observed that A.P. had blood on her face and "bruises all over her," and Susan testified that Pyle had texted her earlier in the day to inform her that he had hurt A.P. The responding police officer—Orozco—testified that he had observed bruising to A.P.'s arm and scratches on her face on the day of the assault, and photographs taken by Orozco depicting A.P.'s injuries were admitted into evidence.

Based on our review of the record, even assuming that the trial court abused its discretion by admitting the complained-of evidence, we conclude that, in the context of the entire case against Pyle, any error in admitting the complained-of evidence did not have a substantial or injurious effect on the jury's verdict and did not affect Pyle's substantial rights. *See Macedo*, 629 S.W.3d at 240; *Haley*, 173 S.W.3d at 518; *Baxter*, 2023 WL 8268292, at *9. Thus, we must disregard any such error. *See* Tex. R. App. P. 44.2(b). We overrule Pyle's sole point.

## F. Modification of Clerical Errors

The trial court's judgment states that Pyle pleaded guilty to the alleged offense and that he pleaded true to the enhancement paragraphs. Those statements are

21

erroneous. Pyle personally entered a plea of not guilty to the charged offense, and he entered a plea of not true to the enhancement paragraphs.

An appellate court may modify a trial court's judgment to make the record speak the truth if it has the necessary data and evidence to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Cain v. State*, 621 S.W.3d 75, 88 (Tex. App.—Fort Worth 2021, pet. ref'd). Accordingly, we modify the judgment to reflect that Pyle pleaded not guilty to the alleged offense and pleaded not true to the enhancement paragraphs. *See White v. State*, No. 02-23-00039-CR, 2023 WL 6889985, at *7 (Tex. App.—Fort Worth Oct. 19, 2023, no pet.) (mem. op., not designated for publication) ("Accordingly, the portions of both judgments that reflect that White pleaded guilty are modified to reflect that White pleaded not guilty.").

## IV. CONCLUSION

Having overruled Pyle's sole point, we affirm the trial court's judgment as modified.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 6, 2025

22